IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

N.N., a minor, by S.S., the parent and next
friend of N.N., individually and on behalf
of others similarly situated,                                          OPINION and ORDER

            Plaintiff,
                                                                                    08-cv-581-bbc

      v.

MADISON METROPOLITAN SCHOOL DISTRICT,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case brought under 42 U.S.C. §§ 1981 and 1983 is before the court on plaintiff

N.N.'s motion for class certification.  Plaintiff N.N. is a student in the Madison

Metropolitan School District who alleges that defendant denied her request to transfer to

another school district in 2007 because doing so "would increase the racial imbalance in the

school district."  In the alternative, plaintiff was told that she could obtain the transfer, but

she would have to pay tuition as a nonresident.

      Plaintiff seeks to represent a class of all students in the district who allegedly were

denied a transfer on the basis of race.  She relies on Parents Involved in Community Schools

v. Seattle School Dist. No. 1, 551 U.S. 701 (2007), in which the Court concluded that two

1

school districts violated the equal protection clause by using race in determining student placement at particular schools.  Although the parties in this case agree that defendant has abandoned the policy plaintiff is challenging, she seeks damages for emotional distress and for the tuition that she and other proposed class members were required to pay as a nonresident.

Plaintiff defines the proposed class as follows:  "All students of the District who were denied transfer to another school district, for one or more of the school years from 2002-2003 through 2007-2008, pursuant to the 'racial imbalance' provisions of the District's full-time open enrollment program."  (I have modified this proposed definition in the order below for the purpose of clarity.)  The open enrollment program is governed by a state law that allows students to transfer to other school districts under some circumstances. Wis. Stat. § 118.51.  However, under § 118.51(7), a school district "shall reject any application for transfer into or out of the school district made under [the open enrollment program] if the transfer would increase racial imbalance in the school district."  The district adopted a policy that interpreted this provision to mean that a transfer request could not be granted if it would increase "the minority student population" (1) by more than .04% in the district "as a whole"; (2) by more than .5%  at any particular school or (3) in schools in which the minority population already exceeded 40%.

Plaintiff requests class certification under Fed. R. Civ. P. 23(b)(3), which is

2

appropriate if "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Defendant concedes that plaintiff meets the threshold requirements for class certification under Rule 23(a): plaintiff is a member of the class she proposes to represent (because she allegedly was denied a transfer on the basis of race, Rozema v. Marshfield Clinic, 174 F.R.D. 425, 432 (W.D. Wis.1997)); the proposed class is ascertainable (because the contours of the class are defined, Rahman v. Cherthoff, 530 F.3d 622, 626 (7th Cir. 2008)); the proposed class members are sufficiently numerous (because plaintiff has adduced evidence that at least 350 students are members of the class, Arreola v. Godinez, 546 F.3d 788, 797-98 (7th Cir. 2008)); plaintiff's claims are typical of other class members and each of the claims shares a common question of law or fact (because each of the proposed class members would be challenging the same policy and asserting the same legal theory, Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006)); and plaintiff is an adequate class representative (because her claim does not conflict with the claims of other proposed class members and proposed class counsel is competent, Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997)).

Defendant limits its arguments to the requirements of Rule 23(b)(3), but even these seem half-hearted. It raises two points: (1) the amount of damages will likely differ among

3

class members (meaning that common questions will not predominate over questions affecting only individual class members); and (2) the potential damages are too substantial for each individual class member (meaning that individual cases would be superior to a class action for the fair and efficient adjudication of the controversy).

Defendant's first argument has little support in the case law.  In Blihovde v. St. Croix County, 219 F.R.D. 607, 621 (W.D. Wis. 2003), I noted that "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification."  The law has not changed since Blihovde.  The Court of Appeals for the Seventh Circuit has reaffirmed the view that Rule 23(b)(3) permits a finding that common issues predominate despite differences in damages because district courts have various tools at their disposal to manage such differences.  Carnegie v. Household International, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (possibilities include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."); see also Arreola, 546 F.3d at 801 ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts.").

4

As in <u>Blihovde</u>, 219 F.R.D. at 620, I conclude that common questions predominate over the differences because plaintiff is challenging what seems to be a uniform policy of the district.  Differences in damages are inevitable in a case proceeding under Rule 23(b)(3), as I noted in <u>Spoerle v. Kraft Foods Global, Inc.</u>, 253 F.R.D. 434, 439-40 (W.D. Wis. 2008): "In any class action for damages, no two parties will ever have exactly the same claim.  If simply identifying difference between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class."

In some cases, questions regarding damages may become so numerous or complex that they cannot be resolved feasibly in the context of one case.  <u>E.g.</u>, <u>Pastor v. State Farm Mutual Automobile Insurance Co.</u>, 487 F.3d 1042, 1047  (7th Cir. 2007) ("The picture of a federal district judge presiding over thousands of evidentiary hearings each involving a trivial amount of money is not a pretty one.").  However, there is no evidence that is likely to happen in this case.

Plaintiff has identified two types of compensatory damages class members may seek.  (Punitive damages are not available against municipalities in civil rights actions.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981); <u>Kolar v. Sangamon County of State of Illinois</u>, 756 F.2d 564, 567 (7th Cir.1985)).  The first is the cost of nonresident tuition, something that should be determined relatively easily and with little or no dispute.

The second type, emotional distress, is certainly less concrete, but not complex.  In

5

part of a discussion in its brief that appears to have been taken verbatim from <u>Hyderi v. Washington Mutual Bank, FA</u>, 235 F.R.D. 390, 402 (N.D. Ill. 2006), defendant cites <u>Aiello v. Providian Financial Corp.</u>, 239 F.3d 876, 881 (7th Cir. 2001), for the proposition that claims for emotional distress are inappropriate for a class action.  That is a bit misleading. The primary question in <u>Aiello</u> was whether a debtor could obtain damages for emotional distress when a creditor seeks to collect a debt in violation of the automatic stay under 11 U.S.C. § 362.  The court devoted one sentence to the class certification question: "[S]ince the case is not suitable for class action treatment because of the variance in injury among the members of the class and the cost of the individualized hearings that would in consequence be required for assessing damages, class certification was properly denied."

It cannot be gleaned from that one sentence that class actions are inappropriate when emotional distress is at issue. A reading of the opinion as a whole makes it clear that the "variance in injury" involved differences regarding liability as well as damages.  Because the case was a proposed class action on behalf of debtors who allegedly had been harassed by the defendant, each claim would have to be analyzed individually to determine whether a particular act violated the automatic stay.

The parties cite no other decisions by the court of appeals that address this issue and I have found none in my own research.  District courts in this circuit seem to be split on the question.  <u>Compare</u> <u>Balogun v. Midland Credit Management, Inc.</u>, 2007 WL 2934886, *8

6

(S.D. Ind. 2007) (certifying class action in case involving claimed damages for emotional distress); Bullock v. Sheahan,  225 F.R.D. 227, 230 (N.D. Ill. 2004) (same); Simpson v. Flagstar Bank, 2003 WL 22244789, 3  (S.D. Ind. 2003) (same) with Hyderi, 235 F.R.D. at 402 (denying certification of a class suing under the Real Estate Settlement Procedures Act where each class member's recovery for "mental anguish" as well as "consequential economic damages" would require individualized hearings); Thomas v. Arrow Financial Services, LLC, 2006 WL 2438346, *5 (N.D. Ill. 2006).  In any event, even if it could be shown that questions regarding damages will become unwieldy, defendant fails to explain why it would be improper to resolve liability in one case and then, if liability is found, decertify the class to proceed with damages actions separately, as suggested in Carnegie, Blihovde and other cases.

Defendant's other argument is that the potential damages of each plaintiff are high enough to make individual lawsuits a superior mechanism for resolving any disputes.  This argument is fine as far as it goes.  The court of appeals agrees that class actions for damages are easiest to justify when potential recovery on an individual claim is relatively small.  Thorogood v. Sears, Roebuck and Co., 547 F.3d 742, 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated."); Pastor, 487 F.3d at 1047 ("[I]f a class member has a large enough stake to be able to litigate on his own, the case for class-action treatment is weakened.").

7

The problem is that defendant gives little reason to believe that potential damages for each proposed class member are great enough to require individual lawsuits. Again, the only potential damages identified by the parties are the cost of nonresident tuition and emotional distress. Neither party has adduced evidence on the cost of nonresident tuition, but it is unlikely to be more than a few thousand dollars. This may be a large sum to a parent trying to provide an education to a son or daughter, but in most cases it will not be enough justify a separate lawsuit. Further, it is likely that most parents denied transfers by defendant chose to stay put rather than incur the additional expense of paying nonresident tuition.

This leaves damages for emotional distress. Again, quantifying mental harm is always more difficult than quantifying economic harm, but defendant does not argue that emotional damages would be greater in this case than in a case involving real embarrassment and humiliation, such as a strip search. Blihovde, 219 F.R.D. at 622 (certifying class action in case involving allegedly unconstitutional policy of strip searches after noting that, "a number of courts have recognized in other strip search cases [that] damages for each class member are likely to be relatively small"). The lack of adequate individual incentive is supported by the apparent failure of any other student or parent to file a civil rights action challenging defendant's policy, which has been in place since 1998. 5 Moore's Federal Practice, § 23.46[2][b][ii] (3d ed. 2009) ("If few class members have filed individual suits, a court is likely to conclude that the members do not possess strong interests in controlling their own,

8

separate litigation.")

In any event, the size of potential claims is not the only factor for determining whether a class action is superior to individual lawsuits.  The ultimate question is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury."  Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003).  That standard is met in this case because the parties agree that liability can be resolved "in one fell swoop."  Id. ("If there are genuine common issues, issues identical across all claimants . . . then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.").  Accordingly, I conclude that class certification under Fed. R. Civ. P. 23(b)(3) is appropriate.

One final matter remains.  Under 28 U.S.C. § 2403, a district court is required to notify the state Attorney General in any case in which the constitutionality of a state statute is "drawn in question."  In this case, plaintiff is not directly challenging a statute; the focus of the case is a policy of the school district.  However, the district enacted that policy in accordance with Wis. Stat. § 118.51(7), which prohibits a school district from allowing any transfer that will "increase racial imbalance in the school district."  Thus, whether or not plaintiff is seeking a declaration that invalidates § 118.51(7), the statute's constitutionality

may be "drawn in question" by plaintiff's claim.  The attorney general's position on that question is no secret; in December 2007 he published an opinion stating that § 118.51(7)(a) "is inconsistent with the equal protection guarantee of the United States Constitution, as those guarantees were applied in the <u>Seattle School Dist. No. 1</u> case."  Op. Atty. Gen. 4-07, December 20, 2007, <u>available at</u> 2007 WL 4928489.  Regardless whether the attorney general's position is known already, he must be given an opportunity to weigh in on the matter.  Accordingly, I will send a copy of this order to the Wisconsin Attorney General so that he may decide whether he wishes to intervene on behalf of the state under § 2403.


ORDER

IT IS ORDERED that

1.  Plaintiff N.N.'s motion for class certification under Fed. R. Civ. P. 23(b)(3), dkt. #17, is GRANTED.

2.  The class is defined as follows: "All students attending school in the Madison Metropolitan School District who were denied transfer to another school district, for one or more of the school years from 2002-2003 through 2007-2008, under the provisions in the district's full-time open enrollment program that limited student transfers that increase a racial imbalance."

3.  Pursuant to Fed. R. Civ. P. 23(c)(2), plaintiff is directed to prepare a proposed

10

notice to all members of the class for the court's approval.  Plaintiff may have until June 14, 2009 in which to submit a proposed notice to defendant.  By June 21, 2009, the parties must file a  joint agreed notice, or, if they cannot agree, plaintiff should submit its proposed notice and defendant should submit its objections to that notice.

4.   The clerk of court is directed to send a copy of this order to the Wisconsin Attorney General, in accordance with 28 U.S.C. § 2403.

Entered this 1st day of June, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

11